IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MOBILEMEDIA IDEAS LLC | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:11-CV-2353-N |
| RESEARCH IN MOTION LIMITED and | ) |
| RESEARCH IN MOTION CORPORATION | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THE
MOTION TO AMEND THE JOINT PROPOSED SCHEDULING ORDER**

Defendants Research In Motion Limited and Research In Motion Corporation (collectively, "RIM") respectfully submit this Reply in further support of its Motion to Amend the Joint Proposed Scheduling Order (Dkt. No. 180).

**I.   INTRODUCTION**

MMI's Opposition to RIM's Motion to Amend (Dkt. No. 185) argues that RIM's motion should be denied because: (i) RIM purportedly has not shown good cause for amending the Proposed Scheduling order, and (ii) the discovery RIM seeks does not bear on MMI's standing to sue.  MMI is wrong on both fronts.  RIM has demonstrated good cause based on MMI's failure to provide the necessary standing-related discovery prior to the proposed deadline for joining parties.  Further, the discovery sought by RIM *does* bear on standing because it will elucidate the level of direction and control over MMI's patent-related activities by the two companies that

formerly owned the patents. Indeed, since RIM first filed its Motion to Amend, MMI has produced several unredacted documents that further demonstrate that MMI *does not*, in fact, own all necessary rights to the patents-in-suit to have standing to sue on those patents.

## II.   RIM HAS DEMONSTRATED GOOD CAUSE TO AMEND THE JOINT PROPOSED SCHEDULING ORDER

RIM has shown good cause to extend the proposed deadline based on MMI's failure to provide the necessary discovery.[1] As initially explained in RIM's Motion to Amend, MMI has thwarted discovery on the standing issue by refusing to produce unredacted documents from its own files. (Dkt. No. 180). These documents include MMI Board of Directors meeting minutes, as well as documents distributed and discussed at those Board meetings. MMI's seven-member Board contains four members appointed by Sony Corporation and Nokia Corporation (the two companies that initially owned the patents-in-suit, and that each hold a 24.9% ownership interest in MMI). (App. at 5) MMI's Board meeting minutes are thus highly relevant because they evidence the level of direction and control maintained over MMI by Sony and Nokia. By redacting those meeting minutes and associated documents, MMI is withholding highly relevant discovery.

MMI nonetheless asserts that RIM has not shown good cause because it has sought extensions on the proposed deadline to join parties previously, and because it has been seeking the unredacted documents since August 2011. (MMI Br. at 1.) While true, these facts are not

---

[1] While MMI contends that Rule 16(b)(4) requires that RIM show "good cause" in this motion, Rule 16(b)(4), does not apply to a <u>proposed</u> scheduling order. *See McKinley v. Kaplan,* 177 F.3d 1253, 1257 (11th Cir. 1999) (holding that a proposed scheduling order must be entered "to trigger the operation of Rule 16(b)"). Likewise, MMI relies on inapposite cases to support its assertion that the parties' Proposed Schedule is "a stipulation . . . akin to a contract." Those cases concern *trial* stipulations, not pre-trial *proposed* scheduling orders. (*See* MMI Br. at 4-5 (citing *Rathborne Land Co., LLC v. Ascent Energy, Inc.,* 610 F.3d 249 (5th Cir. 2010) (remanding defendant's post-trial challenge to stipulation of fact regarding ownership); *Hymel v. C.I.R.,* 794 F.2d 939 (5th Cir. 1986) (holding that the lower court improperly disregarded the parties' stipulated facts for trial) and *United States v. McKinney,* 758 F.2d 1036 (5th Cir. 1985)).

evidence of failure to show good cause, but instead demonstrate that RIM has consistently sought to obtain the necessary discovery to meet the deadlines, but has been consistently thwarted in that endeavor by MMI. Indeed, the discussions between the parties are ongoing, and MMI admits in its Opposition (albeit only in a footnote) that it has re-produced several documents with fewer redactions *after RIM filed this motion*. (MMI Br. at 2.) The unredacted portions of these newly produced documents disclose highly relevant facts demonstrating that MMI does not possess all substantial rights to the patents-in-suit. Unfortunately, MMI's new production did not reproduce many of the previously redacted documents, and its new production *still* contains multiple improper redactions.

RIM has demonstrated good cause for bringing this motion and extending the deadline to join parties. On the other hand, in its Opposition, MMI does not allege, much less demonstrate, that it would suffer any prejudice if the deadline were extended, nor could it for at least three reasons. First, extending the deadline would not add any new issues such that MMI would be subject to new discovery obligations. Second, MMI's refusal to produce responsive documents in compliance with its discovery obligations is the root cause of RIM's request for an extension. Third, extending the deadline to join parties would not affect any other pretrial deadlines on the parties' proposed schedule, nor would it delay the proposed February 5, 2013 trial date.[2]

### III.    RIM HAS A SOUND BASIS TO SEEK STANDING-RELATED DISCOVERY

MMI contends that RIM should not seek standing-related discovery because "there is no basis to argue that MMI does not have standing." (MMI Br. at 5.) But in both its initial Answer and in its Answer to MMI's Amended Complaint, RIM *has asserted* that MMI does not have

---

[2] RIM has a pending motion to stay this case pending reexams and a related arbitration. The proposed case schedule, with proposed trial date, has been submitted by the parties in case the litigation is not stayed by the Court. RIM's stay motion is fully briefed and currently pending before the Court.

standing. (Dkt. Nos. 12 & 178). RIM is thus entitled to discovery on the issue of standing, and MMI is not entitled to withhold discovery based on the premature, summary judgment-style argument that it will ultimately prevail on the merits. *Benchmark Elecs., Inc. v. JM Huber Corp.,* 343 F. 3d 719, 725 (5th Cir. 2003) (holding that summary judgment is improper when a party has not been allowed full discovery); *see also Mercer v. Allegheny Ludlum Corp.,* 125 F.R.D. 43, 46 (SDNY 1989) ("Plaintiffs are not, in my judgment, required to accept the disclaimer of non-relevance... in respect of documents which to date they have not been permitted to inspect").

Further, MMI is simply wrong to assert that there can be no dispute regarding its ownership rights to the patents-in-suit. The standing inquiry focuses on the totality of the circumstances regarding transfer of rights, including analysis of the level of direction and control the patent transferor has over the transferee with respect to the patents. *See, e.g., Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007). The evidence RIM obtained even before MMI's new production of documents strongly indicates that MMI does not have all necessary rights to its patents to maintain standing, including the following exemplary facts:

- Sony and Nokia, the transferors of the patents-in-suit, each maintain a 24.9% ownership interest in MMI, (App. at 5.),
- Sony and Nokia each appoint two Board Members to MMI's seven-member Board, and thus appoint a majority of MMI's Board (App. at 27),
- Sony and Nokia each hold a right to dissolve MMI should it fail to generate sufficient revenues and licenses from the patents. (App. at 11)

MMI's newly produced unredacted documents evidence a high level of direction and control maintained over MMI by Sony and Nokia. For example, MMI re-produced a document entitled "Scope of Business," previously redacted in its entirety as "non-responsive," that defines the permissible scope of MMI's business as approved by MMI's board of directors. (App. at

45.) The Scope of Business dictates, among other things, that "The Company has been formed to acquire, develop, administer and manage Intellectual Property rights relating to... mobile and other devices and to collect income in respect of such inventions reflected in such Intellectual Property rights and its use in end user devices," and "No Person shall initiate legal action against cellular network service providers."

There can be no question that this document is relevant to MMI's standing to sue because it (1) establishes specific restrictions on MMI's enforcement of the patents-in-suit, including prohibiting MMI from asserting the patents against whole classes of companies (e.g., network carriers or retailers), and (2) was ratified during the first meeting of MMI's board of directors, of which Sony's and Nokia's designees together constitute a majority, and (3) requires advance board approval before MMI is permitted to engage in any activities with the patents-in-suit beyond those that the Sony, Nokia, and other directors narrowly circumscribed. (App. at 45; App. at 30.).

Other newly unredacted Board meeting minutes further demonstrate that the Sony and Nokia Board members actively participate in setting MMI company policy (*See, e.g.,* January 19, 2010 Meeting Minutes, App. at 47 ("[T]he Board discussed plans for beginning the business…Next, the Board discussed a communications plan….Management presented their initial thoughts regarding the structure of the licenses MMI will offer.")), and are otherwise informed about MMI's ongoing licensing and litigation activities. (*See, e.g.,* April 15, 2011 Board Meeting Agenda, App. at 51 ("Licensing offers sent to 210 companies… Meaningful meetings with 15 new companies have already been held in 2011 [including] Acer, ASUS, Audiovox, Casio, Sylvania, Fujitsu, HP Iriver, Mitac… [etc.]").

These facts demonstrate that Sony and Nokia retain the right to control, direct or influence decisions relating to MMI's enforcement of the patents-in-suit (and have in fact done so.) *See, e.g., VirnetX, Inc.,* Case No. 6:07-cv-80, at 10 ("SAIC has the right to influence or control VirnetX's enforcement decisions, which further indicates SAIC did not transfer all substantial patent rights to VirnetX."). Unfortunately, MMI continues to redact many of its board meeting minutes and attachments.[3] These remaining redacted documents plainly relate to MMI's standing to assert the patents-in-suit, and MMI's arguments to the contrary are merely an attempt to prevent RIM from obtaining full discovery of the factual basis for MMI's contentions regarding standing.

## IV.   THE COURT SHOULD GRANT RIM'S REQUESTED RELIEF

Contrary to MMI's suggestion, RIM has not requested an indefinite extension of the deadline to file its motion to join additional parties or dismiss for lack of standing. Instead, RIM asks only that the deadline be extended until the Court rules on RIM's pending motion to compel MMI's production of complete standing discovery, or MMI voluntarily produces this discovery, whichever comes first. Because at least one of those events is certain to occur, the deadline that RIM requests is no more uncertain than the Northern District of Texas deadlines for patent rule disclosures. *See. e.g.,* Amended Misc. Order No. 62, § 3-3 ("Within 45 days from the date the party claiming patent infringement serves the disclosure of asserted claims and preliminary infringement contentions on all opposing parties, each party opposing a claim of patent infringement must serve on all other parties its preliminary invalidity contentions and file notice of such service with the clerk."). This Court should disregard MMI's unfounded and illogical contention that RIM has requested an "indefinite extension."

---

[3] RIM continues to negotiate with MMI, but will move to compel if MMI does not agree to remove all improper

**V.     CONCLUSION**

      For the foregoing reasons, this Court should grant RIM's Motion to Amend the Joint Proposed Scheduling Order.

---

redactions.

|  |  |
|---|---|
| January 10, 2012 | /s/     John R. Emerson           |

John R. Emerson
Texas State Bar No. 24002053
russ.emerson@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219-7673
Tel: 214.651.5328
Fax: 214.200.0884

*Of Counsel:*
Mark G. Matuschak
mark.matuschak@wilmerhale.com
Wyley S. Proctor
wyley.proctor@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

S. Calvin Walden
calvin.walden@wilmerhale.com
Kate Hutchins
kate.hutchins@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

James M. Dowd
james.dowd@wilmerhale.com
Michael D. Jay
michael.jay@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300
Fax: (213) 443-5400

***Attorneys for Research In Motion Limited and Research In Motion Corporation***

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule 5.1. As such, this document was served on all counsel who have consented to electronic service on this 10th day of January, 2012.

                                            /s/ John R. Emerson
                                            John R. Emerson